FRED CLARK v. TOWN OF ROSEDALE ET AL.

1. SUBSCRIPTION TO RAILROAD. *Breach of contract.  Cancellation.*

Under act 1890 (Laws, p. 690), empowering a town, through its officials, to subscribe for the stock of a railroad company, and issue bonds in payment, when authorized by a vote, ordered on petition of freeholders, where, in case of an election, there is such a petition, accompanied by a written proposal on the part of the railroad company that its line will be completed within a certain time, such stipulation, though not in the petition of freeholders or the order for the election or notice thereof, becomes a part of the contract, and, on failure to complete the road within the time fixed, the town so subscribing may sue on the bond given by the railroad company as a guaranty that the contract will be complied with, or may have cancellation of its bonds in the hands of the company.

2. ULTRA VIRES. *Extension of time.  Varying contract.*

In such case an extension of time to complete the road, granted by the municipal board, is of no validity, because of its want of power to materially vary the contract authorized by the vote.

FROM the chancery court of Bolivar county.

HON. W. R. TRIGG, Chancellor.

The Rosedale & Mississippi Central Valley Railroad Company presented an application to the municipal authorities of Rosedale, asking that the town subscribe to the capital stock of said railroad company to the amount of $12,500, to be paid for by the issue of interest-bearing bonds. It was prayed that the proposition should be spread on the minutes, and that an election should be held, at which there should be submitted to the legal voters of the town the question to subscribe for said capital stock, and issue thirty-year bonds in payment therefor, to bear six per cent. interest from October 1, 1890, said bonds and interest to be payable at the Hanover Bank, in the city of New York. The petition set forth certain benefits to the town to be derived from the building and completion of said railroad as proposed, and, among other things, contained the following stipulation : " Upon the delivery of said bonds, as aforesaid, to said president, he, the said president, and the vice-president and general manager of said company to enter into bond in the sum of fifteen thousand dollars to cancel and return all said bonds and coupons, or, if interest has been paid on any of said bonds, to refund and repay such interest, unless said railroad shall be completed and running to the said Bogue Phalia, from the said town of Rosedale, on or before the first day of October, 1891."

Accompanying the above was another petition, signed by a number of resident freeholders of the town of Rosedale, praying for an election and for the submission of the question of subscription and the issuance of the bonds as above stated. This petition of freeholders did not mention any limit of time for the completion of said road.

Upon the presentation of the petition, the municipal authorities passed an ordinance providing for the election, and in the ordinance set forth the form of a notice of the election to be published, and which was published.

In both the ordinance and the notice the terms of the proposed subscription and the details as to the issuance of the

bonds, as above, were set forth.  There was a preamble to
the ordinance, reciting the fact that the railroad company
had submitted to the council the proposition for subscription,
but in neither the ordinance nor the notice of election was
any mention made of the limit of time for the completion of
the road.  The ordinance was passed July 14, 1890.

The election was held, and on August 11, 1890, an ordi-
nance was passed, reciting the fact of the election and its
result in favor of subscription.  By it the mayor was author-
ized and directed to subscribe for the town to the capital stock
of the company in the sum of $12,500, "to be paid in the
bonds of said town as proposed by said railroad company and
accepted by this council, subject to the voting of said sub-
scription."  The ordinance directed the preparation of the
bonds, and, further, that "the said bonds so prepared shall
be delivered to the president of said railroad company by the
said mayor, upon the receipt by the said mayor from said
president of one hundred and twenty-five shares of the
capital stock of said company, issued to the town of Rose-
dale, and the guaranty of said president as provided in his
application.  *Said bonds and coupons shall be made payable to
bearer, but at the time and place before ordained.*"  There was
no express allusion in this ordinance to the limit of time
for the completion of the road.  The subscription to the
stock was made, the railroad company gave bond as required,
and the interest-bearing bonds of the town, payable to bearer,
were delivered to the company October 1, 1890.

On September 4, 1891, after the constitution of 1890 had
gone into effect, the railroad company addressed a communi-
cation to the municipal authorities to the effect that, because
of unexpected stringency in financial circles, it had been un-
able to negotiate the bonds or to realize on other securities,
and that, while work on the railroad had begun within the
time agreed upon, still it could not be completed within that
time.  It prayed for an extension of the time until January
1, 1893, on such terms as the authorities should deem just.

Thereupon, on the same day, the municipal authorities passed an ordinance granting such additional time, on condition of the surrender of certain interest coupons by the railroad company, and of the execution of a new bond conditioned for compliance with the contract on the part of the railroad company.   These conditions were complied with, and a new bond was given and approved.

On April 2, 1892, was approved an act of the legislature providing that the said railroad company should, within eighteen months therefrom, commence the work of construction on said road, and should complete the same within ten years from March 1, 1892, and, failing so to do, that it should forfeit its charter and franchises as to so much of said road as should not be completed under the requirements of the act, and that all bonds voted by the people, or issued by the board of supervisors, for the portion of the road not built, should be void.

On April 3, 1892, nine months before the time for the completion of the road under the agreement for the extension of time, the appellant, Fred Clark, a citizen of Rosedale, on behalf of himself and other tax-payers of said town who might choose to join in the suit, filed the bill in this case against the town of Rosedale and said railroad company, averring that said bonds were void, because the railroad had not been completed within the time stipulated, and praying that the bonds should be canceled.   The defendant answered, and a decree was entered dismissing the bill, from which complainant appeals.

Section 19 of the act of 1890, under which the subscription was made, authorizes the municipal authorities, upon the petition of twenty freeholders who are voters, stating the amount and terms of the subscription, to order the election and provide for holding the same, and that the result of the election shall be entered on the minutes of the board.   Section 20 provides that if the election is in favor of subscription, the mayor shall subscribe to the capital stock, and, when author-

ized by the qualified electors, shall deliver to the company the bonds of the municipality.   Laws 1890, p. 690.

*Fred Clark, pro se.*

1. The condition under which the bonds were voted and issued was not complied with by the railroad company, and therefore, under the contract, the bonds were void, and the matter stood as if there had been no election.

2. The subsequent proposal of the railroad company to extend the time for completing the road was nothing more than a proposition for the issuance of new bonds, because the old bonds were then *functus*.   This proposition required the assent of two-thirds of the qualified electors of the town of Rosedale, under the constitution then in force.   Therefore, the action of the municipal authorities in assuming to extend the time was *ultra vires*, and gave the bonds no validity.

The terms of the contract under which the bonds were issued were fully stated in the proposition of the railroad company voted on by the people, and the municipal authorities had neither express nor implied authority to change the terms of that contract.

*Mayes & Harris,* for appellees.

1. There is no question of the power to make the subscription or issue the bonds.   This is given both by the charter of Rosedale and that of the railroad company.

Did the negotiations between the parties impose a condition in the contract, an obligation that the road should be completed by October 1, 1891?   Was completion by that date of the essence of the contract?   We answer, No.   It is true the proposition of the railroad company contained this feature, and the final order of the council provided that the bonds would be delivered in accordance with the company's proposition; and it is true that the parties for some time proceeded on the supposition that the completion within the time named was a material part of the contract; but the parties were in error.

The contract was made, not by the negotiation between the company and the council, but by a vote of the people on the proposition submitted under the statute authorizing the same. The limit of time is found only in the negotiation with the council. It is not found in the statute, nor in the question on which the people voted, nor in the vote. It was a term inserted in the contract by the council without authority, and was suggested by the company manifestly as an inducement to get the proposition through. The subsequent history of the case developed the fact that the people did not care to insist on that term.

Under the act of 1890 (Laws, p. 690, § 19), the proposition to subscribe must come from the freeholders of the town, not from the company. The petition of the freeholders is the vitalizing step; that of the company is unknown to the statute. Here the freeholders' petition contains no limitation of time; nor was it in the order of submission or the notice of election. The vote was for the unconditional subscription. After election, the only function of the council was ministerial—to ascertain the result and enter it on the minutes. The action of the mayor in delivering the bonds and receiving the stock certificates, was proper.

The fact that the company supposed that an onerous condition, to which it had offered to submit, had been accepted, when it had not, did not avail to subject it to that condition. The contract is statutory, and the statute limits its operation. The bond executed by the company is without consideration, and void, because it was not bound to do the thing the doing of which the bond undertakes to secure. We mean that the bond is void in so far as it undertakes to make the date named of the essence of the contract.

2. Suppose the foregoing view be not accepted, then we say the council waived the requirement insisted upon by extending the time of completion. Power to make the subscription was complete, and the vote was duly taken. In such there was no requirement as to the time of completion,

nor was there such requirement in the statute. That requirement, supposing it to be effectual, was by the council alone, and it could modify or abandon it. *County of Randolph* v. *Post*, 93 U. S., 502.

Section 183, constitution of 1890, did not deprive the council of the power to make the waiver. This section is directed against the making of subscription *thereafter*. It does not profess to affect those already made, but, on the contrary, declares that where subscriptions have been authorized by vote, prior to the adoption of the constitution, and the terms of submission and subscription have been complied with, such subscription may be consummated. This section is much like that of the Illinois constitution quoted in above case. The subscription was made in August, 1890, several months before the constitution was adopted. On this point see *Nugent* v. *Supervisors*, 19 Wall., 241.

There is nothing to prevent the council from relinquishing the exaction, unexpectedly injurious to the town, which was not imposed either by the statute or the vote, and was not an element in the proceeding essential to the consummation of the subscription. An instructive case in this connection is that of *German Bank* v. *Franklin County*, 128 U. S., 526.

Another reason why § 183 of the constitution does not avoid this extension, is in the special nature of this contract, which was such that the extension is immaterial only on the question of the *bonds*, while the constitution deals only with the question of *subscription*.

The bill speaks of the promise to complete the road by October 1, 1891, as a condition, but it was not such. It was neither a condition precedent nor subsequent. The stock was paid for by the delivery of bonds, negotiable and unquestionably valid at the time. Nowhere is there any stipulation in the contract that the failure to complete the road October 1, 1891, was to cancel the town's subscription, or invalidate the bonds.

The term which has given rise to all the trouble—the limi

tation of time—is not one of these made conditions subsequent. It is not in the submission or the subscription.

CAMPBELL, C. J., delivered the opinion of the court.

The rights of none except the parties to the contract are involved in this suit. It is not embarrassed by the claim of any third person, and the only question is, what is proper as between the town and the railroad company? There can be no dispute of the fact that the vote for the subscription was with reference to the guaranty by the company that the road would be built to a certain point within a time named; and failure to accomplish this entitled the town to a cancellation of the bonds, and a return of any interest paid on them. If the bonds had been negotiated as contemplated, the only reliance of the town for indemnity for the breach of the contract would have been the bond it took for that purpose; but, as the bonds remained in the hands of the company, it is proper to decree their surrender and cancellation, whereby the contract made will be carried out, according to the intent of the parties.

The fact that the petition of citizens, and the order of the town authorities for the election, did not specifically mention the proposed completion of the road to a point and within a period named, makes no difference, since it is apparent that the written proposal of the company for a subscription on this basis was the foundation of the petition and order for an election, with reference to which both are to be read. The proposal of the company, containing the assurance of the completion of the road as stated as an inducement to the town to subscribe and pay by bonds, accompanied the petition of citizens for an election; and upon these the order for an election was made, and all must be read together as one whole. While there was not a *condition* strictly, there was a stipulation, the breach of which gave the town a right of action on the bond it took as security for the performance of the stipulation; or, as a more effective and appropriate rem-

edy, a right to invoke the power of chancery to cancel the bonds in the hands of the company.

The extension of time to complete the road by the town authorities was of no effect, for the want of power in the municipal board to materially vary the contract authorized by the vote at the election held.   This case is widely different from *County of Randolph* v. *Post*, 93 U. S., 502, which rests upon the doctrine of estoppel, if it has any support at all.   Here there is no feature of that sort.

*The decree is reversed, and cause remanded; or a decree may be entered here, if desired, cancelling the bonds.*