H. C. CARTER ET AL. V. BOARD OF DRAINAGE . COMMISSIONERS.

(Filed 11 October, 1911.)

1. Drainage Districts—Owners of Lands—Bond Issue—Limited Liability.

In proceedings for the drainage of Mattamuskeet Lake under chapter 442, Laws of 1909, wherein an issue of bonds for the purpose was authorized, each tract of land was assessed its pro rata part for the payment of the bonds and interest thereon : *Held*, upon the payment of the assessment upon the land the owner would be discharged from liability and not responsible for the failure of other owners to pay, except through the method of assessment provided by the statute.

2. Drainage Districts—Bond Issues—Maintenance—Interest—Implied Authority — Necessary Incidents — Injunction—Excessive Issues—Exceptions—Public Interests.

In proceedings to drain Mattamuskeet Lake under chapter 442, Laws of 1909, it was decreed by final judgment, not appealed from, that a bond issue of $400,000 was required. This act authorized the issuance of the bonds for construction, "together with interest thereon, costs of collection or other incidental expenses." By virtue of chapter 67, Laws of 1911, the Drainage Commission prepared to issue an additional $100,000 of bonds, part of which was to be used in expenditures for maintenance of the system until its final completion, and part to provide for the payment of the interest on the original issue : *Held*, (1) the additional issue of the bonds was necessary and an incident to the original issue, and valid ; (2) if the issuance of the additional bonds was in an amount excessive for the purpose, any interested persons, owners of land in the drainage area, could except on that ground ; (3) work of such a public nature would not be interfered with by injunction against the issuance of the additional bonds.

3. Drainage Districts—Bond Issues—Limited Liability—Protection of State's Guarantee—Conveyance of Interest—Waiver—Interpretation of Statutes.

The limitation of liability on the bonds issued under chapter 509, Laws of 1909, was to protect the State and the State Board of Education because of the power in the said act enabling the State to guarantee three-fourths of said bonds, to be repaid out of the sales of land, which was waived by the Southern Land Reclamation Company by proper resolutions, to whom the State

Board of Education has conveyed its interest; and by chapter 67, Laws of 1911, any defect in the machinery of the tax levy was cured so that the interest on the original issue of $400,000 of bonds could be taken care of and thus enable the sale of the bonds by the drainage commissioners.

HOKE, J., concurs in result.

APPEAL from HYDE, from order of *O. H. Allen, J.,* denying plaintiff's motion for restraining order, heard at chambers in Washington, June, 1911.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Ward & Grimes, H. C. Carter, Jr., and J. C. B. Ehringhaus for plaintiffs.*

*Mann & Jones and John H. Small for defendant.*

CLARK, C. J. Under chapter 442, Laws 1909, the plaintiffs and other landowners filed a petition for the drainage of Mattamuskeet Lake and adjacent lands. The State Board of Education, by virtue of its ownership of the lake bottom, was made a party and was chargeable with three-fourths of the expense of the drainage under chapter 509, Laws 1909. Said proceeding was prosecuted to a final decree. Exceptions were filed by plaintiffs and others, which were sustained and the final judgment rendered, to which there were no exceptions or appeal. Under the judgment in that proceeding $400,000 in bonds were directed to be issued for construction. Each tract of land was assessed its pro rata part for the payment of said bonds and interest thereon, upon payment of which its owner would be discharged from liability. No owner is responsible for other owners by reason of their failure to pay, except through the method of assessment provided by the statute.

By virtue of Laws 1911, ch. 67, the drainage commissioners purpose to issue $100,000 in additional bonds, $40,000 of which is to be expended in the maintenance of the system during the three years till its final completion, and $60,000 to provide interest on the other bonds during the two years, thus making a total bond issue of $500,000. Of this sum, the Southern Land Reclamation Company is charged with three-fourths by reason

of its purchase from the State Board of Education, besides the charge upon the other lands to the extent of many thousands of dollars which said Reclamation Company has purchased from other landowners within the drainage district.

This injunction is sought by the plaintiffs to restrain the issue of the additional $100,000 bonds. His Honor properly held that the plaintiffs had not shown sufficient grounds to entitle them to such restraining order. The additional $100,000 in bonds is not an addition to the debt for the purposes of improvement, but to provide for those expenses which are the necessary and natural result. Sixty thousand dollars is to provide interest on the $500,000 bonds during two years. This interest must be provided for either out of the pockets of the landowners or by issuing bonds. It is the legal incident of the $400,000 in bonds which are to be issued under a decree to which the plaintiffs were parties and from which they did not appeal. Any one of them, or any other landowner, can pay his pro rata part of such interest, and thereupon the amount of bonds will be diminished accordingly.

The same is true as to the $40,000 which are to be issued to maintain and keep the work in condition for the three years which will be required for its completion. The $400,000 being required as adjudged by the final decree for the construction of the work, money must be provided for the maintenance and good condition of the work as it is done from time to time until its final completion. This money must be raised by the property which is chargeable with the $400,000 of bonds, else there will be serious loss by impairment of the work while being constructed.

It is open to the plaintiff and any others to file exceptions as to these amounts, and show, if they can, that a lesser sum will maintain the work during the progress of construction. They can also file exceptions in like manner and show, if they can, that a less sum than $60,000 will discharge the interest accruing during the two years. But these are not matters which entitle the plaintiff to an injunction to restrain the issue of the bonds.

The original act, chapter 442, Laws 1909, sec. 34, authorized the commissioners to issue bonds for the full amount of the assessment for construction, "together with interest thereon, costs of collection or other incidental expenses." This section has been repealed by section 34, chapter 67, Laws 1911, but it shows that the original act authorized the issuing of bonds for "interest and other incidental expenses." Indeed, the power to issue bonds for interest arises by implication, even if there is no express delegation of this power in the statute. "The limitation of indebtedness does not, however, relate to interest coupons attached to the bonds, and although they may swell the indebtedness beyond the limitation, the bonds are nevertheless valid." 21 A. and E. Enc. (2 Ed.), 43, and note 2.

The limitation in Laws 1909, ch. 509, was to protect the State and the State Board of Education because of the power in said act enabling the State to guarantee three-fourths of said bonds, to be repaid out of the sales of land. This limitation has been waived by the Southern Land Reclamation Company by proper resolutions of the stockholders and directors, which as successor to the State Board of Education it had power to do. Chapter 67, Laws 1911, was intended to cure any defect in the machinery of the tax levy to take care of the bonds and empower the defendant to issue bonds for interest. Unless there is a provision to take care of the interest for the two years and to provide for maintaining the work, as it progresses, up to its completion, the board will doubtless be unable to dispose of the $400,000 bond issue. It will require that entire amount, according to the decree itself, to provide for the construction of the work. Hence, the interest and the maintenance of the work during the progress of construction cannot be paid out of the $400,000. The decree adjudging $400,000 to be necessary for the construction of the work and directing the issue of bonds for that amount, not being appealed from, the plaintiffs cannot now be heard to contest it.

As already said, if there is any question as to the full amount of $100,000 being necessary to pay off the interest and for maintenance, during construction, the plaintiffs can pay

their assessment under protest and bring suit to recover any amount in excess, as provided by the statute. But they should not be allowed to stay a work of great public improvement, affecting many hundreds of other people, upon the allegations made in this complaint. The power to issue the $100,000 additional bonds is clearly conferred upon the drainage commissioners by the statute, Laws 1911, ch. 67, sec. 15, and the execution of their powers will not be interfered with unless their action is influenced or procured by fraud. *Sanderlin v. Lukin,* 152 N. C., 744. If there should be any misconduct on the part of the commissioners, they can be held responsible in an action against them, but the work itself will not be stayed nor the issuance of the bonds for construction, interest, and maintenance which is necessary for that end.

. The Legislature was not restricted to the amount of bonds, or the assessment made, under the first act passed in 1909. *Durrett v. Davison* (Ky.), 8 L. R. A. (N. S.), 546, and cases cited in the notes thereto.

Affirmed.

HOKE, J., concurs in the result.