J. M. McCRACKEN et al., Taxpayers, etc., v. GREENSBORO, NORTHERN AND ATLANTIC RAILWAY COMPANY and the BOARD OF COMMISSIONERS OF ALAMANCE COUNTY et al.

(Filed 13 January, 1915.)

1. **Railroads—Bond Issues—Township Subscriptions—Principal and Agent—County Commissioners—Conditional Subscription—Unauthorized Acts.**

Under a statute authorizing the submission to the voters of townships, etc., along the line of a proposed railroad, the proposition to subscribe in bonds to the undertaking, declaring the county commissioners to be the agents of the townships for the purposes of the act, which was accordingly done, but upon conditions expressed in writing between the railroad company and a trust company, advertised before the election in connection with the proposition to subscribe, that the bonds should be held by the trust company and delivered to the board of county commissioners for cancellation should the railroad not be in operation to a stated extent in three years, between certain points on another railroad or railroads: it is *Held*, that the condition upon which the issuance of the bonds was approved by the voters became binding between the parties thereto, and though the county commissioners were acting as the corporate and governmental agents of the voters, they were without authority to alter, in any substantial particular, the proposition as submitted and approved, and therefore their act in further extending the time for the completion of the road beyond that specified was ineffectual.

2. **Railroads—Bond Issues—Township Subscriptions—Contracts—Estoppel.**

Where there is nothing in a statute authorizing counties, townships, etc., to submit to the qualified voters therein the proposition of subscribing to a proposed railroad, which prohibits the vote being taken upon certain lawful conditions, not expressed in the statute, and the railroad company had theretofore entered into a written agreement with a trustee that the bonds should be held by it and delivered upon the stated conditions, which were of importance in voting upon the question proposed, the railroad company, having agreed to the conditions contained in the contract, is estopped to question their validity.

3. **Railroads—Counties and Towns—Bond Issues—Conditional Subscription—Contracts—Equity—Time of the Substance—Conditions Precedent—Enforcement.**

Where a statute authorizes the submission to the voters of townships along the line of a proposed railroad the question of subscribing thereto, and creates the board of county commissioners agents of the townships for the purpose, and the voters have approved the proposition upon condition, among other things, that the proposed railroad should be in operation within three years, the period stated is of the substance of the contract, and will be strictly enforced whether regarded as a condition precedent or subsequent, without power of the county commissioners to change or modify it; and the principles of equity relating to relief against forfeitures or penalties have no application; and it is *Further held*, the condition provided in this case was a condition precedent, where strict performance may be insisted on.

**4. Contracts—Conditions—Part Performance—Equity—Money Expended.**

Under the facts of this case it is held that the defendant railroad company is not entitled to consideration in equity upon the grounds that it had expended money upon a proposed railroad to which certain townships had voted to subscribe, upon certain conditions, which the defendant had failed to perform, among them, that the road should be operated from certain points within three years.

APPEAL by plaintiff from *Rountree, J.,* at August Term, 1914, of ALAMANCE.

Civil action, heard on demurrer to complaint. A sufficient preliminary statement of the facts, as they appear in the complaint, is very well set forth in one of the briefs, as follows:

"On 5 August, 1912, a petition was presented to the board of commissioners of Alamance County on the part of each of those townships of said county named in paragraph 2 (record, p. 4) of the complaint in this action—said petitions praying orders for elections to be held in each of said townships on the question of subscribing to the preferred capital stock of the Greensboro, Northern and Atlantic Railway Company, as provided for in chapter 770 of the Public-Local Laws of 1911 and the laws amendatory thereof. The elections were duly ordered and held; the aforesaid townships each voted in favor of a subscription; and bonds, bearing date 8 October, 1912, were issued by the county commissioners as provided by the aforesaid chapter of the Public-Local Laws of North Carolina.

"Subsequent to 5 August, 1912, the date of the orders for the elections, but prior to 17 September, 1912, the date on which the elections were held, viz., on 8 August, 1912, an agreement, set forth in the sixth paragraph of the complaint herein (record, pp. 11-16), was voluntarily entered into between the railway company and the Greensboro Loan and Trust Company. This agreement provides, among other things, that in consideration of the qualified voters of these several townships voting in favor of a subscription, the railway company agrees that the bonds therefor, when issued, shall be delivered to the trust company to be held in trust, upon the condition that said bonds shall not be delivered to the railway company, or to any one else for it, until a railway from Greensboro, N. C., through Alamance County, to some connecting point on the Seaboard Air Line Railway, or the Norfolk and Southern Railroad, or both, is completed by this company or its successors, and there are in operation over such line of railway trains for the transportation of passengers and freight; and upon the further condition that unless a railway is so constructed and in operation within three years of the issuance of said bonds, the trust company shall deliver the bonds to the commissioners to be destroyed, and all the rights and equities of the railway

company in said bonds shall cease. This agreement was widely published prior to the election in all the election districts. The bonds themselves contain no reference to the agreement, but, when issued, they were delivered to the trust company by the commissioners and are now held by it.

"After the lapse of about twenty months of the thirty-six months time limited in said agreement for the completion of said railway, the railway company presented to the commissioners a petition, as set forth in the seventh paragraph of the complaint (record, pp. 16-20), alleging that it would be impossible to complete the railway within the time limited, and praying that the said time be enlarged by an additional two years. This petition was granted. Thereupon plaintiff brought this action and alleged that the commissioners were without authority to grant such an extension of time, and asked that the order to that effect be declared void, and that the trust company be enjoined from making any other disposition of said bonds than might be made under the aforesaid agreement between it and the railway company. Defendant railway company demurred to the complaint. Demurrer sustained and judgment accordingly. Plaintiff excepted and appealed."

*W. S. Coulter and J. R. Hoffman for plaintiff.*
*Long & Long and King & Kimball for defendant.*

Hoke, J. From a perusal of the facts stated in the complaint, it clearly appears that this question of subscription was submitted to the voters of these townships and approved by them as a conditional proposition, and, in order to make the same definite and put it in a form that would render it enforcible, the railroad, some time prior to the election and in reference thereto, entered into an agreement with the Greensboro Loan and Trust Company, "as trustees for the various townships," among other things, that if subscriptions should be approved at the approaching election, the bonds should be prepared and left with the trust company, among other stipulations, on condition:

"First. That the said bonds shall not be delivered to the Greensboro, Northern and Atlantic Railway Company, or any one else for it, unless and until there is constructed by it, or by its successor or successors, or its assigns, so much of its projected or proposed lines of railway as shall constitute and include a line from a point within the city of Greensboro, North Carolina, in an easterly direction through the county of Guilford to the Alamance County line, and thence through the county of Alamance to a point necessary to connect, and which does connect, with the Seaboard Air Line Railway Company, and the Norfolk and Southern Railroad Company's line or lines, or either of them, or with the subsidiary line or lines of said corporations, or either of them.

"Second. That in the event the said portions of the lines of railway of the party of the first part is not constructed by it or its successor or successors or assigns, within three (3) years from the date of the issuance of said bonds as indicated and set forth in condition first, as above set out and numbered, that then in that event it is agreed by the party of the first part that the party of the second part (The Greensboro Loan and Trust Company) shall, and it agrees that it will, in that event, deliver all of said bonds so issued by the county of Alamance for the several townships in said county, to the board of commissioners of Alamance County, in order that they may all be destroyed; and it is further agreed by the party of the first part that in the event of the failure to construct the aforesaid lines of railway within three (3) years from said date of the issuance of said bonds, that all rights and equities which the party of the first part may have in said bonds shall cease.

"Third. That said bonds shall not be delivered by the party of the second part to the party of the first part, or to any one for it, unless and until the party of the first part, its successor, successors, or assigns, construct said lines of railroad as agreed in Condition No. 1 (first), as above set forth, and has in operation over said line of railway within three (3) years trains for the transportation of passengers and freight." And the complaint further states: "That said contract was duly and widely published in all of the aforesaid townships before the date of said election." And on these facts we are of opinion that the board of county commissioners is without power to alter the contract and grant defendant company the two years additional time. It is true that, under section 16 of the act incorporating the company, chapter 770, Public-Local Laws 1911, all the counties, townships, cities, and towns along the line of the proposed road are authorized to subscribe to the undertaking, on approval of a majority of the qualified voters, etc., and that the board of county commissioners are declared to be the corporate agents of the townships for the purposes of the act, etc.; and·we incline to the opinion that the act intended, as to these townships, to vest in the county commissioners the ordinary powers of governmental agents in the premises; but, under our Constitution and by the express provisions of the statute, this subscription is only valid on approval of the qualified voters of the respective municipal bodies specified, and, the question having been submitted and approved by them in a conditional form, definitely set out in a contract and formally assented to by the railroad company, it must, as between the parties thereto, be taken as a binding agreement, and the county commissioners, even though acting as corporate and governmental agents, are without power to alter the proposition, as submitted and approved, in any substantial particular. The position as presented has not been directly passed upon in this jurisdiction, but it has been recog-

nized as sound in principle by the Supreme Court of the United States in *Quinlan v. Green Co.* (Ky.), 205 U. S., 450; *Citizens Savings and Loan Assn. v. Perry Co.,* 156 U. S., 692, and other cases, and seems to have been directly approved in *West Va. and P. R. R. Co. v. Harrison County,* 47 W. Va., 273, and *Clark v. Town of Rosedale,* 70 Miss., 542, both of them courts of recognized ability and learning. See, also, Jones on R. R. Securities, secs. 267, 268.

It is urged for defendant that the county commissioners, under their power as corporate agents, have the right to modify the contract made by them when it clearly is promotive of the interests of the community concerned, and several cases were cited where such a modification had been upheld, among others, *The County of Randolph v. Post,* 93 U. S., 502; but an examination of these authorities will disclose, we think, that the agreement is allowed to prevail only when the municipal officers have power of themselves to make the subscriptions or where the vote of the municipality being in general terms for the subscription, the corporate officers were intrusted with making the contract designed to carry the vote into effect. But in the case before us, as we have seen, the voters have expressed their approval on a definite proposition as contained in a contract which they have made through the Loan and Trust Company as their agents and representatives for the purpose, and which specified that the bonds were not to be delivered till the road was completed, and that, unless same was completed within three years, they were to be returned and canceled and all rights and equities of the road should cease.

*The County of Randolph v. Post* was the case of an executed contract, where the road had been completed and in operation and the county was endeavoring to avoid its obligations on grounds, many of them, highly technical, and where the county authorities, as stated, had been intrusted with the general power of making the contracts in the premises. In that case, too, it appeared that the county officers charged with the duty had declared that the road was completed; had delivered the bonds and had received the stock of the railroad company in return therefor, and this was held to be an estoppel on the municipality. The case has very little similarity to that presented here.

It is further contended that, as the statute contained no provision for submitting the proposition in its conditional form, that a stipulation of the kind relied upon should be considered and treated as void.

In many of the decisions where the vote was for a conditional sub-scription the statute or resolution contained provision to that effect; but there is nothing, in itself, illegal in taking the sense of the voters upon the proposition in that form. There is nothing in the statute that forbids it, and assuredly the railroad company, having signified their assent in

a definite contract, formally executed, and by which they have obtained the township subscription, will not be heard to assail it on any such ground. They may not accept the benefits and repudiate the burdens of their contract, and are estopped to assail the validity of the stipulations. *Sprunt v. May,* 156 N. C., 388; *Hutchins v. Bank,* 128 N. C., 72.

Again, it is insisted that this provision is in the nature of a forfeiture, and that the courts are inclined against the specific performance of such a stipulation, and that the county commissioners, under their power as corporate agents, should be permitted to modify it as to nonessentials, and that, on the facts in evidence, time should be considered a nonessential, within the meaning of the principle.

It is true that our Court has frequently expressed its approval of the principle that, in ordinary business contracts, in which the consideration has wholly or in part passed, conditions subsequent which look to the forfeiture of rights and covenants for liquidated damages, which are in their effect but penalties, will be construed with some strictness, and, in the exercise of its equitable powers, that it will, at times, relieve against forfeiture in the one case and will adjust the conflicting interests in disregard of the penalty in the other. But the principle does not obtain in the case of conditions precedent where strict performance may be insisted on. *Corinthian Lodge v. Smith,* 147 N. C., 244; 1 Pomeroy Eq. Jurisdiction (3d Ed.), sec. 455.

This contract, in effect, provides that the bonds shall not be delivered or become binding obligations of the township unless the road is completed within three years, and, in that aspect, may be regarded as a condition precedent; but, whether the one or the other, in contracts of this character, there is high authority for the position that time is of the substance, and that the contract in that respect may not be altered by the commissioners, who are only the agents to carry its terms into effect, with power to modify, perhaps, in matters nonessential. The provision allowing three years seems to be a reasonable one, and if, in the face of this very definite stipulation as to time, it can be extended to two years, at the end of that time it may be changed again, and the voters and residents of the community are, in the meantime, shut off from making effective effort in other directions.

Speaking to this question of time, in the 47 W. Va., *supra, Judge Brannon,* delivering the opinion, said: "Time is the essence of the contract. If the county had given a few months or a year, we might say it was not so intended; but, giving nearly three years, we may more readily say that both sides so regarded it. Look at the strong language—an express proviso that if the road should not be ready for ties by 1 January, 1887, the subscription should be forfeited. Time is often nonessential, where no one suffers by delay, as in many purchases of land; but the

very nature of this case forces the conclusion that time was all important to the county, as we cannot suppose that it intended to handcuff itself for an indefinite term against efforts to get elsewhere the benefit it had in view, should this company fail to perform the work." *Ballard v. Ballard,* 25 W. Va., 470: "Where the condition requires the railroad to be begun or finished before a certain date, it is held that time is of the essence of the contract, and the subscriber may be discharged from liability by a failure to comply with the condition." 1 Elliott R. R., secs. 116, 117. Where a town agreed to issue its bonds on "performance of certain conditions by a railroad company—as that it should construct its road from a certain point to a certain point within a certain time—if the company does not perform the condition within the time it cannot, though prevented by floods, compel the issue of the bonds, though it afterwards completes the line. 1 Wood R. R., sec. 119, citing *R. R. v. Thompson,* 24 Kan., 170. Subscription, "provided the town of F. is made a point, and said road is put under contract in one year from 1 September, 1853." Held, putting the road under contract was a condition precedent to right of company to recover, though the road was finished and running by 1 September, 1858; *Judge Dillon* saying the letting to contract as stipulated might have hastened completion. *R. R. v. Boestler,* 15 Iowa, 555.

In the present contract the parties have not only made the express stipulation that if the road is not completed to a certain point in three years the bonds will be surrendered and destroyed, and that all rights and equities under the contract shall cease, but have added yet another with regard to time: that the bonds shall not be delivered *unless* and until the railroad shall construct its lines as above set forth and has in operation over said line, within three years, trains for the transportation of passengers and freight.

We are not inadvertent to an allegation made by the railroad in its application for extension, that they have already spent many thousands of dollars in making surveys to ascertain the desirable route. Even if this be accepted as a fact in plaintiff's pleadings, because annexed thereto as an exhibit, it is a very indefinite statement on which to find an equity by reason of moneys expended. A perusal of the allegation will show that the railroad company in the twenty months already expired have not even yet located their line and are not in any attitude to invoke consideration of the Court on the ground of diligence or of any defense of large expenditure.

On the facts in evidence, we are of opinion that there is error in allowing the county commissioners to extend the time, and the judgment to that effect is

Reversed.