ALLEN, J., dissenting.
This is an appeal from an injunction restraining the collection of an assessment for maintenance beyond 15 cents per acre as to lands outside of the lake bottom in Mattamuskeet Drainage District in Hyde.
This district was organized in 1909 by the landowners around and outside of Lake Mattamuskeet in conjunction with the State Board of Education, then the owner of the lands constituting the bed or bottom of the lake, together with some lands not covered by water. Carter v. Comrs., 156 N.C. 183. *Page 6 
The drainage of this lake was undertaken to benefit over 50,000 acres of low lying land owned by individual petitioners lying around the lake and also to enable the State to redeem for arable purposes the bed of the lake of 48,830 acres. The land lying around the lake on an average for two miles in its entire circumference was subject to overflow and after heavy rains was often flooded and was covered by water for considerable periods of time. As recited in the petition, "the lake when very full, as it now is and has been for several years, overflows the adjacent lands and makes a large part of them unfit for cultivation. The lands lying without the bounds of said territory consist of large areas of swamp lands which are almost continually covered by water, and after excessive rains the water from these areas overflows the land within said proposed district, often almost totally destroying the crops and bringing great loss upon the residents and landowners of said proposed district."
In the original petition, section 5, it was recited that the (6) cost "of maintaining and keeping the drainage in effect shall not exceed 15 cents per acre for each acre included within the bounds of said district." It has been found necessary, in order to properly maintain the drainage system, to levy a larger sum, and the plaintiffs, owners of some of the lands outside the edge of the former lake, seek to restrain the collection of a larger amount. From the judgment of the court granting a restraining order to that effect, the defendants appealed.
The original petition, sec. 5, contained a provision that "the cost of maintaining and keeping the proper drainage in effect shall not exceed 15 cents per acre for each acre included within the bounds of said district," but this provision was based upon the sanguine hopes of the petitioners and was omitted in all subsequent proceedings and is not embraced in the judgment creating the district nor referred to in any other proceedings subsequent to the petition. As is not unusual, the cost of constructing the drainage system and of maintenance has exceeded the original estimate, especially since the great increase in the cost of labor and material. Doubtless the fact that original estimates often prove inadequate induced those whose intelligence and public spirit conceived this enterprise from *Page 7 
incorporating such restriction in the judgment which is the charter of the drainage district. Exceptions were filed to the final report but none thereto, nor to the judgment, upon the ground that the restriction of assessments for maintenance to 15 cents per acre was not retained. Carterv. Comrs., 156 N.C. 183.
The judgment creating the district decreed that it was "established under and in accordance with the provisions of ch. 442, Laws 1909, and ch. 509, Laws 1909." Section 29 of the first-named statute gives to the commissioners of drainage districts, created under that act, power, without any other restriction therein than to make such assessments as "may be necessary to maintain" the district after its formation.
In January 1911, the State Board of Education conveyed to the Southern Land Reclamation Company, a corporation, the lands owned by said board and embraced within said drainage district, containing 48,830 acres, and in the conveyance it is specified that the conveyance carries all the rights, privileges and obligations of the State Board of Education under the special proceedings for the establishment of the "Mattamuskeet Drainage District" under ch. 509, Laws 1909, "except the Southern Land Reclamation Company, its successors and assignees is to pay three-fourths of the cost of the maintenance (7) as well as the construction of said drainage district." This stipulation exempted the owners of lands outside of the lake bottom from the equality of assessment per acre according to benefit which would ordinarily lay upon them.
There are over 50,000 acres of lands owned by the other members of the drainage district which lie outside of that conveyed by the State as above. It follows, therefore, that whenever the drainage commissioners levy an assessment for drainage purposes three-fourths thereof must be levied upon the assignees of the State Board of Education, owners of 48,840 acres and one-fourth upon the 50,000 acres outside of the lake bottom, with the result that such outside lands will pay an assessment at a rate of slightly less than one-third of that levied upon the lake bottom lands. This should be sufficient protection for the plaintiffs against any abuse of assessment. It is not alleged herein that the assessment is levied in abuse of the power and discretion vested in the drainage commissioners of districts created under ch. 442, Laws 1909.
If there was any allegation sustained by proof, that the assessment is in excess of what is necessary for maintenance, or in abuse of the powers conferred by ch. 409, Laws 1909, or that the levy was made arbitrarily, or from an improper motive to oppress any of the owners of the lands lying outside of the lake district, an issue of fact would be raised for determination and upon sufficient proof the court would *Page 8 
be justified in granting a restraining order to restrain the levy of such assessment, but even in such case the courts are always slow to enjoin pending such inquiry the prosecution of works affecting the public welfare, as this Court has often held.
The object of the injunction here sought is not to restrain the assessment of the tax for maintenance to prevent oppression to the plaintiffs (for 50 cents per acre per annum can not be oppressive to maintain the drainage of lands much of which will produce 80 to 100 bushels of corn per acre), but relying upon a recital in the petition or prospectus of the proceedings to restrict the taxation of the petitioners who are some of those owning lands outside of the district and thus throw vastly more than the burden, three times as much, which is now laid for the maintenance upon the owners of the lake bottom under the contract they agreed to in taking the conveyance of the State's interest.
It is not alleged nor shown that the assessments are not in the proportion of one-forth on those holding lands outside of the lake bottom and three-fourths on the owners of the lake bottom, nor is it shown (though alleged) that the assessment is in excess of what is absolutely necessary for the maintenance of this great work.
Though there was an expression in the petition that "none (8) of the lands in the district" should be assessed for maintenance more than 15 cents per acre, this was not followed up by any subsequent order in the cause nor by the decree establishing the district. Chapter 509, Laws 1909, provides that the State as owner of the lake bottom should pay only three times as much for establishing the drainage system as the owners of the lands in the rest of the district and should be liable for only three-fourths of the bond issue, but that after the district was established (sec. 4), "the cost of repairs and maintenance shall be borne equally by all the lands in said district." The State Board of Education in its conveyance of the State's interests, above set out, generously required that its assignee, the Southern Land Reclamation Company, should pay three-fourths of the cost of maintenance also. This generosity is ignored and repudiated by the plaintiffs who seek to keep down their assessments for maintenance to 15 cents per acre, which would require the assessments levied upon the owners of the lake bottom to become many times triple the assessment upon themselves.
If the assessment upon the lands of those outside the lake should be restricted to 15 cents per acre, according to the stipulated ratio, the assessment upon the lands in the lake bottom would be only 45 cents per acre, and the sum raised from the entire assessment would be totally inadequate for maintenance, and this would cause the destruction *Page 9 
of the work of so much importance to the public and upon which $600,000 have already been spent.
The plaintiffs waived the limit of 15 cents per acre for maintenance by acquiescence in the final report and also in the final decree establishing the district without incorporating such restriction, and by assenting to the issuance of $500,000 in drainage bonds, whose holders, though not parties to this action, will have their rights seriously impaired if there is not a sufficient fund raised for maintenance from time to time. This fund may be less or greater at different times, depending upon the season and the conditions as to labor and material, which will vary. The only restriction as to the apportionment of the maintenance is that the amount assessed shall be necessary and that three-fourths shall be paid, and not more, by the owners of the lake bottom, the assignees of the State's interests and the other one-fourth by the rest of the district.
The plaintiffs have shown no equity which entitled them to the restraining order which besides seeks to disregard the ratio created by the decree establishing the district and the statutes chs. 442 and 509, Laws 1909.
Reversed.