GEORGE FORQUER *et al.*, Appellants, *v.* SUSANNAH FORQUER, Appellee.

### APPEAL FROM ST. CLAIR.

The Circuit Court can correct a clerical error, made in copying a decree, by supplying an omission, which was evident from the minutes of the court; but if it does not appear that it was the intention of the court to insert the particular clause omitted, the proper remedy is by error to the Supreme Court, where the erroneous decree may be corrected.

THIS case was commenced by bill in chancery, by appellants, in the St. Clair Circuit Court, for correcting mistake in partition of lands. Decree of partition, report and order of sale made at the March term, 1856, of said court. Order of sale in usual form, authorizing John Thomas and N. Niles to sell all the interest of the parties in the premises. The bill sets out, among other things, that Forquer, deceased, through whose death all parties claim, devised all his estate, real and personal, to Susannah Forquer for life; that one Casselbery has a lease on part of the premises for three years, from the first of March, 1855, and prays that, in case partition cannot be made, the same may be sold, subject to said lease. Bill taken for confessed,

and decree entered as aforesaid, without ordering sale, subject to said lease.

At the September term, 1857, appellees move the court to amend the record of the decree aforesaid, so as to save and reserve to said Susannah all her rights under and by virtue of said lease, according to the prayers of said bill, and introduce affidavits of—

*Joseph Vollinger*, who swears, in substance, that he was a purchaser at the sale under the decree, and has since sold to Casselbery.

*N. Niles* swears that, as solicitor for complainants, he drew the decree, and, by inadvertence and mistake in drawing up the decree, the lease to Casselbery was not mentioned, nor the interest to Susannah Forquer saved to her, as prayed for in the bill; that during the pending of said suit, and before the sale under the decree, the said Niles assured his clients that the rents would be reserved to her in the decree, and inserted a prayer in the bill to that effect, with their consent; that she never released the same, etc., or would have assented to the decree as made.

*John Thomas*, commissioner to sell, swears that he sold at auction, at outcry, said land, according to the order of the court, as reported to the court at the last term thereof; that the said Shooks, and Casselbery, and Vollinger, purchased said land in separate parts; that they, and many others, were present at the sale; that, before the sale commenced, when all the bidders were on the ground, the fact of the existence of the lease to Casselbery, on a part of said land, was talked of and discussed, etc., and that notice was distinctly given, at said sale, to all the bidders, etc.; that the widow held said lease, and claimed the rent; that witness expressed the opinion to the bidders that she was entitled to, and would collect, the same, and such was the universal understanding at said sale, so far as opinions were expressed; that, in the opinion of witness, owing to such understanding, the land brought less than it otherwise would have done.

*William B. Oglesby* swears that he attended the sale in question, and that the subject of the widow's claim for rent was discussed by the bidders and commissioners before the sale, and it was understood by all persons, so far as opinions were expressed, that the rent would not pass to the purchaser, but was reserved to the widow. Deponent was acting as friend and agent of the family, and gave notice publicly of the lease before the sale, that the rent was coming to the widow. Such was the universal understanding.

*George Forquer* swears that the lease for three years, not yet expired, was read by Thomas, the commissioner, at and before

the sale; that it was understood by all that the land was sold subject to the lease, and that the rent due, and to become due, was reserved to his mother, and, in the opinion of witness, the land covered by the lease was sold for less, by several dollars per acre, on that account; that both the Shooks, and Casselbery, and Vollinger, were present on the ground, and had notice, before the sale, of the lease, and made no claim against the reservation, to the best of his belief.

Casselbery, a purchaser at said sale, and also a purchaser from Vollinger at the sale, resisted the motion and presented affidavits to the effect following:

*Elijah Badgly* swore that he was present at the sale, and was a bidder; and after the sale commenced, witness asked Thomas, commissioner, if there was not a lease to Casselbery, and if the same should not be reserved in the sale, to which Thomas publicly replied, in the presence and hearing of all the bidders, that it was his opinion, as a farmer (not as a lawyer), that the rent would go with the title. He then continued to sell the premises without reserve. Henry Louis bid off part of the premises—sixty-five acres. A. W. Shook purchased a part, and Joseph Vollinger became interested in part of said premises.

*Charles Casselbery* swore that, at the time of the sale, he presented a written lease to Thomas, the commissioner, who said that his opinion was, that the lease would hold good, and that the profits of the same would go with the title to the land. That part of said premises was bid in for Joseph Vollinger, who has since sold the same, and given a warranty deed.

*A. W. Shook* swore that he was at the sale, and purchased a part of the land without any reservation whatever.

*Dominique Karlskind* swore that he had a person present, bidding on part of the land for him; that during the sale, Thomas, the commissioner, said he thought the purchaser would be entitled to the rent under the lease; that Thomas sold the land without condition or reservation; that affiant acted as interpreter for parties at the sale who did not understand the English language, which afforded him a good opportunity of knowing what took place at the sale.

This was all the evidence upon which the court allowed the decree of sale to be amended, so as to reserve the rent of said lease to Susannah Forquer, to which decision of the court Casselbery excepted, and brings the case, by appeal, to this court, and assigns, for error, that the court below erred in allowing said amendment without notice to Henry Louis, one of the purchasers.

UNDERWOODS, for Appellants.

N. NILES, for Appellee.

CATON, C. J.   This was not a clerical mistake of the clerk in entering up the decree which was rendered by the court, but was an error of the court in rendering the decree, which should be reversed on error.   There is nothing to show that the court noticed the prayer of the bill, that the rights of the widow, in the lease, should be reserved to her in the sale to be made of the premises, and that the judge intended to reserve such right in the decree.   The draft of the decree was drawn by the complainants' solicitor, and he swears that he inadvertently omitted to insert the saving clause, according to the prayer of the bill. The presumption is, that the court inspected the draft thus drawn, and pronounced it as the decree of the court, without critically comparing it with the bill, and hence was inadvertently led into the error which, undoubtedly, exists in the decree. The clerk correctly copied into the record the draft of the decree as it was rendered.   If the judge's minutes showed that there was a saving clause, we might presume that the draft prepared by the solicitor did not express the whole of the decree, and that the clerk had, by mistake, omitted to enter the saving clause in the decree, when the amendment might have been authorized by the statute of jeofails, but there is nothing to show that the court ever had an intention to insert such saving clause.   This, then, was clearly a judicial, and not a clerical, error, which can only be corrected in this court.

The order must be reversed and the suit remanded.

*Decree reversed.*