### S. S. MANN v. T. C. MANN ET ALS.

(Filed 6 November, 1918.)

**1. Judgment—Estoppel—Drainage Districts—Amendments.**

Where the final judgment in proceedings to form a drainage district, under a statute, has omitted to include a reservation in the petition that the assessments on the lands should not exceed a certain amount per acre, and an injunction against a greater assessment has been refused by final judgment, in a later action, this judgment operates as an estoppel between the same parties to have the judgment in the first proceedings amended so as to incorporate therein the limitation sought to be imposed.

**2. Judgments—Amendments—Subsequent Term.**

A final judgment rendered in due course in proceedings to establish a drainage district may not be amended at a subsequent term of the court to supply an alleged omission to limit the assessments to be made on the land in accordance with that stated in the petition, there being nothing to show that the judgment was not recorded by the clerk as actually given to him, or that it had been omitted by inadvertence of the judge or the mistake of any one.

**3. Appeal and Error—Judgments—Collateral Attack.**

The correction of a final judgment for error rendered by a court having jurisdiction over the parties and subject-matter is by appeal, and it may not be collaterally attacked except for fraud, collusion, etc., or when it is void and its invalidity appears upon its face.

**4. Judgments—Estoppel—Parties—Subject-matter—Form of Action.**

Where a final judgment has been rendered between the same parties on the same subject-matter, it is not essential that a later action or proceeding be identical in form for it to estop the parties therein, as *res judicata.*

**5. Judgments—Correction—Equity.**

One who has been defeated on the merits in an action at law cannot afterwards resort to a bill in equity upon the same facts for the same redress.

**6. Judgments—Third Persons—Equity—Innocent Persons—In Pari Delicto.**

Upon this motion, made in the cause to amend a final judgment in proceedings to form a drainage district so as to restrict the amount of as-

23—176

sessments made upon the lands after the issuance of bonds thereon, the principles are applied that the one of two innocent persons must suffer whose conduct has occasioned the loss.

7. **Judgments—Amendments—Inadvertence—Laches—Drainage Districts.**

Where by motion at a subsequent term of the court a final judgment entered in proceedings to establish a drainage district, under the provisions of a statute, is sought to be amended so as to include a provision limiting the amount of assessments to be made on the lands, the mere failure of the parties at the time to request that the provision be inserted in the judgment does not alone entitle them to the relief sought.

8. **Drainage Districts—Judgments—Assessments—Statutes.**

A provision in the petition limiting the amount of assessments to be made on lands within a drainage district being formed under the provisions of the statute, which was not inserted in the final judgment rendered in due course, may not at a subsequent term be supplied by amendment, being also contrary to the statutory provisions and invalid.

9. **Judgments—Amendments—Laches—Equity—Drainage Districts.**

The parties having failed for nine years after final judgment, in proceedings to establish a drainage district, to proceed for a correction of this judgment therein have lost their equitable right by their laches, if any they had, to have the judgment amended so as to supply an omission caused by inadvertence or mistake, etc.

10. **Judgments—Amendments—Statutes—Laches.**

A motion for relief from a judgment coming within the provisions of Revisal, sec. 513, because of mistake, inadvertence, surprise or excusable neglect, should be made within the time fixed by the statute; and if a motion to amend a final judgment in proceedings under the statute to form a drainage district comes within the intent and meaning of this section of the Revisal, the parties will lose their rights by failing to act in the time required.

11. **Appeal and Error— Superior Court— Judgments— Refusal to Allow— Amendment—Several Grounds—Reasons Assigned.**

Where the trial judge has given one of several valid reasons for refusing to amend a former judgment upon petition in the cause, the Supreme Court, on appeal, is not confined to the sole ground of his refusal, and may sustain him upon the others properly appearing in the record.

CLARK, C. J., concurs; ALLEN, J., dissents; BROWN, J., concurs in the dissenting opinion.

SPECIAL PROCEEDINGS, tried before *Bond, J.,* on 10 July, 1918, upon a motion to amend the judgment of the court therein.

The object of the original proceeding was to establish a drainage district composed of the lands covered by the waters of Mattamuskeet Lake and those lands within two miles of its shores, under the Laws of 1909, chapters 442 and 509. The clerk of the Superior Court appointed a board of viewers, and thereafter such proceedings were had as were authorized by the statutes. Exceptions were filed by many of the parties,

which were heard and considered by the court, and finally the district was established by judgment of the court to be known as Mattamuskeet Lake Drainage District. It is now alleged that there was omitted from the final judgment this important provision: "Your petitioners join in the foregoing petition in this proceeding upon the express condition that after the proper drainage of the said proposed district is affected, as set out in this petition, or as may be adopted by the proper authorities as provided for herein and the by-laws authorizing same, then the cost of maintaining and keeping the proper drainage in effect shall not exceed 15 cents per acre for each acre included within the bounds of said district," by the mistake or inadvertence of the court and parties, and the petitioners ask that the judgment be amended by inserting the said clause so as to restrict the power of assessment by the board of drainage commissioners for the costs and expenses of maintaining the district within the prescribed limits as intended by the parties to be done.

The clerk of the court before whom the motion to amend the judgment was made entered the following judgment therein:

"After hearing the evidence and argument of counsel, I find the following facts, to wit:

"(1) That it was the intention of the parties to this proceeding that the final judgment should contain words, in substance, the same as those set out in the original petition, as follows: 'After the proper drainage of the said proposed district is affected, as set out in this petition, or as may be adopted by the proper authorities, as provided for hereunder and by the laws authorizing same, then the cost of maintaining  and keeping proper drainage in effect should not exceed 15 cents per acre for each acre of land included within the bounds of said district; as to all other lands except those embraced in the lake bottom, and as to them shall not exceed 45 cents per acre,' and that the said language, or the same in effect, was omitted from the judgment by mistake and inadvertence.

"(2) That the parties to this proceeding had no notice that said language, or language to the same effect, was not set out in said judgment until twelve months before the filing of this motion:

"And upon said findings of fact it is ordered and adjudged that the said final judgment in this proceeding be and is hereby altered and amended so as to contain the aforesaid omitted words.

"The movants will recover their costs.

"This 2d day of May, 1918.　　　　S. D. MANN,
"*Clerk Superior Court, Hyde County.*"

The respondents, Board of Drainage Commissioners of Mattamuskeet Lake District, New Holland Farms, Inc., and the North Carolina Farms Company, excepted to the judgment and appealed to the Superior Court,

where the presiding judge refused to amend the judgment upon the ground that it would seriously affect the rights of innocent parties who had bought bonds to a large amount issued on behalf of the district, and also others who had purchased lands included in the district, all of whom had acted upon the correctness of the judgment as it now is, and who, therefore, would be greatly prejudiced by any such change in the former judgment. He directed judgment to be entered accordingly, and the motioners appealed to this Court.

Other facts will be found in the two cases above mentioned, as reported in 156 N. C., 183, and 175 N. C., 5, to which reference is again made.

*Ward & Grimes and H. C. Carter, Jr., for plaintiffs.*
*Spencer & Spencer and Small, McLean, Bragaw & Rodman for defendants.*

WALKER, J., after stating the case: This case was before us at a former term, under a different name (*Gibbs v. Drainage Commissioners of Mattamuskeet Lake District,* 175 N. C., 5), upon an application for an injunction to restrain the collection of a tax by the Board of Drainage Commissioners in excess of the amount, as fixed in the clause of the petition above set forth. The case also was here at a still earlier term, when one of the parties sought to restrain by injunction the issuing of $100,000 of bonds to pay interest on a previous issue of bonds to the amount of $400,000, and which required $60,000 and the cost of maintenance of the work until its final completion, which required $40,000 of bonds. (*Carter v. Drainage Commissioners,* 156 N. C., 183.)

This Court dissolved the injunction which had been granted in the first case by *Judge Carr* and affirmed the order of *Judge O. H. Allen* refusing a restraining order in the second case above cited. Our opinion is that those two cases have effectually disposed of this case upon its legal merits, and there is much less reason for allowing the proposed amendment of the judgment than there was to grant the injunction sought in the former litigation over the rights and liabilities of the parties under the final judgment.

If one of the questions now presented was not decided in the *Carter case,* it was directly raised and precisely decided in the *Gibbs case,* which was an application to enjoin the Board of Drainage Commissioners and the sheriff from collecting the assessment made by the former in excess of the 15 cents per acre for keeping up and maintaining the drainage system in good condition, so that it would be suitable for the purposes intended to be accomplished. It is certain that the plaintiffs in that suit could not attack the final judgment of the court collaterally, for so long as it was unreversed or left intact it imported verity. It could be set aside for fraud or upon other equitable ground, or if the

court had pronounced one judgment and another had been substituted or recorded by mistake or inadvertence of the clerk or court, the record might be made to speak the truth, as we will see hereafter, but as long as it remained in its integrity, what it declared could not be questioned in a collateral proceeding, but was and is conclusive, provided the court rendering the judgment had the requisite jurisdiction to do so. If it was erroneous, the remedy to correct the error was by appeal; if irregular—that is contrary to the course and practice of the court—by motion (or direct proceeding) to set it aside; if it was obtained by fraud, collusion, and so forth, by a civil action to have it annulled; and it can be attacked collaterally if it is void and its invalidity appears on its face. No attempt has been made to set it aside upon either of the grounds mentioned, but the plaintiff, or petitioners, seek to have it amended upon substantially the same facts and reasons as were set up in the former proceeding for an injunction (*Gibbs v. Drainage Commissioners, supra*).

The respondent contends that the petitioners are estopped by our decision in that case to proceed further in this one, or, in other words, that the doctrine of former judgment, or *res judicata*, deprives them of the right to again raise the same question which was then decided. This requires us to examine this doctrine in view of the facts and the history of the two cases.

The principle stated generally is that the causes of action must be the same, and the former adjudication must have been on the merits, but it is not necessary that the form of the actions or proceedings must be identical. 2 Black on Judgments (2 Ed.), secs. 726 and 729. We may gather from that learned and accurate author and other sources the following as substantially the statement and application of the rule as to the bar by a former judgment: It is a well-settled rule, and one which is supported by a multitude of authorities, that a party cannot by varying the form of action or adopting a different method of presenting his case escape the operation of the principle that one and the same cause of action shall not be twice litigated between the same parties or their privies. Historically, this important rule is as old as the time of the Roman jurists (Dig. 44, 2, 5. See Pothier on Obl., pt. 4, c. 3, p. 3, art. 4, p. 4) and rests upon broad foundations of justice and expediency. That it has prevailed from very early times in the English law will appear from *Slade's case* (4 Coke, 94b. See, also, Y. B. 12 Edw. IV, 13a), wherein "it was resolved that the plaintiff in this action on the case on assumpsit should not recover only damages for the special loss (if any be) which he had, but also for the whole debt, so that a recovery or bar in the action would be a good bar in an action of debt brought upon the same contract; so, *vice versa,* a recovery or bar in an action

of debt is a good bar in an action on the case on assumpsit." And to quote from a much later decision:. "That the remedy sought, or the mere form of action, may be different does not prevent the estoppel of the former adjudication. If, upon the facts in issue in the former action, the plaintiff was entitled in that action to a remedy such as the law awards as compensation or redress for the alleged wrong, or if upon those facts he was entitled to no remedy, adjudication of his right to recover in that action bars his right to afterwards seek a different remedy upon the same facts or cause of action." *Hardin v. Palmerlee,* 28 Minn., 450; *Miller v. Manice,* 6 Hill (N. Y.), 114, 122.

Under this principle we may cite the familiar rule that one who has been defeated on the merits in an action at law cannot afterwards resort to a bill in equity upon the same facts for the same redress. And so, also, where a claim has been once interposed by way of setoff, whether it was allowed or rejected, if it was considered on the merits, the judgment will bar any independent suit on the same claim. *Eastmure v. Laws,* 5 Bing. N. C., 444. But the cases most frequently calling for the application of this rule are those in which a party attempts to found two separate actions upon a transaction which justifies but one suit. For example, in *Hacashev v. Coddington,* 32 Minn., 92, it appeared that the plaintiff had formerly brought trover against the defendant to recover damages for the alleged wrongful conversion of certain personalty, and now, upon the same state of facts, he sued to recover possession of the specific property itself. In each case he predicated his right to recover upon his general ownership and right of possession of the property, the wrongful possession of the defendant, and his refusal to return it upon the rightful claim of the plaintiff. The only difference was in the relief prayed for. It was held that the subject-matter and cause of action in both cases were the same, although the form of action and relief sought were different, and therefore the judgment in the first action was a bar to a recovery in the second. 2 Black on Judgments, secs. 729 and 730.

There are other apparent exceptions to the rule, but we need not extend this part of the discussion for the purpose of including them, as they have no direct relevancy to our facts. When we examine, even cursorily, the judgment in *Gibbs v. Drainage Commissioners,* 175 N. C., 5, we find that it was based upon several grounds, each one of which was sufficient of itself to defeat the petitioner's recovery. We held, first, that the agreement was violative of the statute (Public Laws of 1909, chs. 442 and 509), in that it was required by section 29 (and also by other sections of the act) that such assessments should be laid upon the lands within the district "as may be necessary to maintain the same after its formation," and because of this conflict between the agreement

restricting the limit of assessment to 15 cents per acre of the land, this Court ruled that no relief against the judgment, legal or equitable, could be granted. It was said in strong and emphatic language by the *Chief Justice* that if the agreement should be enforced it would result that the petitioners would be liable for not exceeding 15 cents per acre, in which event the State's interest, or that of the Board of Education, in the lake bottom would be assessed 45 cents per acre, as the latter paid three-fourths, and, therefore, it followed that the whole assessment of 60 cents "would be totally inadequate for maintenance," and this would cause the destruction of the work, which is of much importance to the public, and upon which $600,000 have already been spent. The Court said, in closing its opinion: "The plaintiffs waived the limit of 15 cents per acre for maintenance by acquiescence in the final report, and also in the final decree establishing the district, without incorporating such restrictions, and by assenting to the issuance of $500,000 in drainage bonds, whose holders, though not parties to this action, will have their rights seriously impaired if there is not a sufficient fund raised for maintenance from time to time. This fund may be less or greater at different times, depending upon the season and the conditions as to labor and material, which will vary. The only restriction as to the apportionment of the maintenance is that the amount assessed shall be necessary, and that three-fourths shall be paid, and not more, by the owners of the lake bottom, the assignees of the State's interests, and the other one-fourth by the rest of the district. The plaintiffs have shown no equity which entitled them to the restraining order, which, besides, seeks to disregard the ratio created by the decree establishing the district and the statutes, chs. 442 and 509, Laws 1909."

The Court further said that if it had been alleged, *and shown,* that the amount of the new assessment was in excess of what was reasonably necessary for the maintenance of the system of drainage, as contemplated by the general statute (Act of 1909, ch. 442), or if it was laid arbitrarily, or from improper motive, to oppress any of the owners of land lying inside of the lake bottom, the petitioners would have presented quite a different case, and would have been entitled to equitable relief by injunction against the levy. But that was not the case, the simple effect being to contravene the statute by enforcing an agreement not authorized by any of its provisions. So we see it was substantially held that the agreement was void as being against the policy and purpose of the law. This will the more clearly appear from the opinion, a part of which is as follows: "If there was any allegation sustained by proof, that the assessment is in excess of what is necessary for maintenance, or in abuse of the powers conferred by chapter 409, Laws 1909, or that the levy was made arbitrarily or from an improper motive to

oppress any of the owners of the land lying outside of the lake district, an issue of fact would be raised for determination and, upon sufficient proof, the court would be justified in granting a restraining order to restrain the levy of such assessment; but even in such case, the courts are always slow to enjoin, pending such inquiry, the prosecution of works affecting the public welfare, as this Court has often held. The object of the injunction here sought is not to restrain the assessment of the tax for maintenance to prevent oppression to the plaintiffs (for 50 cents per acre per annum cannot be oppressive to maintain the drainage of lands, much of which will produce 80 to 100 bushels of corn per acre), but relying upon a recital in the petition or prospectus of the proceedings to restrict the taxation of the petitioners, who are some of those owning lands outside of the district, thus throw vastly more than the burden—three times as much, as is now laid for the maintenance—upon the owners of the lake bottom, under the contract they agreed to, in taking the conveyance of the State's interest. It is not alleged nor shown that the increased assessments are not in the proportion of one-fourth on those holding lands outside of the lake bottom and three-fourths on the owners of the lake bottom, nor is it shown (though alleged) that the assessment is in excess of what is absolutely necessary for the maintenance of this great work."

It was further held that the judgment declared that the drainage district was "established under, and in accordance with, the provisions of chapters 442 and 509 of Public Laws of 1909," and that the parties could not make any agreement which was contrary to an essential or material provision of that statute, and especially one which not only contravened its terms, but would defeat or nullify the manifest purpose or object which the Legislature had in view. 9 Cyc., 480, 481; 6 Ruling Case Law, secs. 106, 107. The statute was passed not only to improve the lands which are affected by it, in usefulness and value, by reclaiming them from their submerged condition and rendering tillable their naturally fertile soil, thereby increasing the wealth and prosperity by the enhanced production of crops of that large and expanding community, but as well did it contemplate the protection of the health of its inhabitants, constituting it, therefore, an important public enterprise.

In view of these considerations, the court in that case felt constrained to hold that the agreement limiting the amount of assessments was of no effect and did not entitle the petitioners to any kind of relief against the judgment, by injunction or otherwise. The provision as to assessments was held to be mandatory in order to fully accomplish what the Legislature designed should be done under the statute. We have the right to consider the intention of the Legislature in deciding such a ques-

MANN *v.* MANN.

tion, and, besides, it is our duty to do so. 13 Corpus Juris., p. 420, sec. 351, and pp. 421, 422; sec. 352 and p. 421.

"It is not necessary that there should be an express prohibition in a statute to render void a contract made in violation of it. It makes no difference whether the prohibition or command is expressed or implied. Even where the statute does not in express terms declare the act unlawful, yet if it appears from a consideration of the terms of the legislation in question that the legislative intent was to declare the act unlawful, no contract involving the doing of such an act can be enforced. In other words, the inquiry is as to the legislative intent, and that may be found not only in the express terms of the statute, but also may be implied from the several provisions thereof. So a contract will not be enforced where it conflicts with the general policy and spirit of the statute which governs it, although there may be no literal conflict." 6 Ruling Case Law (title Contracts), p. 701, sec. 107.

A material fact should be stated here, which we find in the *Gibbs case, supra,* viz.: "In the original petition (section 5) it was recited that the cost 'of maintaining and keeping the drainage in effect shall not exceed 15 cents per acre for each acre included within the bounds of said district.' It has been found necessary, in order to properly maintain the drainage system, to levy a larger sum, and the plaintiffs, owners of some of the lands outside the edge of the former lake, seek to restrain the collection of a larger amount." It therefore follows that this question, though not precisely the same in form, was fully determined in the former action, the parties being the same even if the title of the action was not so.

"The principle of the rule as to *res judicata,* except in the case of mere subsidiary motions and some other instances, has no reference to the form or the object of the litigation in which the particular fact is determined which is thenceforth to be deemed established as between the parties to the dispute. The form or object of the prior litigation does not alter the conclusive effect of the judgment or decision. For instance, where the rights of a party are fully determined upon exceptions to a sheriff's return on sale of real property under execution, the decision is as conclusive as any other judgment. The essential thing is that there should have been a judicial determination of rights in controversy, with a final decision thereon." 2 Black on Judgments, sec. 509. But this case also is controlled by *Carter v. Commissioners,* 156 N. C., 183, where it was attempted (in 1911) to enjoin the action of the drainage commissioners of this district from issuing bonds to the amount of $100,000 for the purpose of paying interest on the bonds for $400,000 already issued and for maintenance of the drainage district, and the court held that the bond issue was valid; that the proceeding to estab-

lish the district had been prosecuted to a final decree; that the drainage system was of a public nature, and that they (the petitioners) should not be allowed to stay a work of great public improvement affecting many hundreds of other people upon the allegations of the complaint (attacking the validity of the bonds), and if there should be any misconduct on the part of the commissioners they can be held responsible in an action against them, but the work itself will not be stayed nor the issuance of the bonds for construction, interest, and maintenance, which is necessary for that end. It, therefore, appears that practically the same question was decided there; nothing, though, was said in that case by the petitioners about the limitation of 15 cents in making assessments in the alleged agreement of two years before, but the Court virtually held that there was no limit to the power of assessment, except the amount necessary to keep up the drainage scheme, beyond which the assessments could not go.

The bond issue of $100,000 was justified upon the distinct ground that it was necessary, under the statute, for the proper maintenance of the works without regard to any agreement of the parties, which was not specifically noticed, because not relied on, though the petition had been filed two years prior to 1911, when the *Carter case* was decided. The Court also held there that the ratio of three-fourths and one-fourth was established for the protection of the State's interest, as it had assumed liability, by way of guaranty, for the first bond issue in that proportion.

The Court in the *Gibbs' case* refused a decree for the petitioners for the additional reason that a large amount of bonds ($400,000) had been issued and purchased by innocent persons in open market, who had the right to act upon the belief that the judgment was correct, and that its integrity would be kept inviolate. "An amendment of a judgment will never be allowed to prejudice the rights of third persons, such as subsequent judgment creditors, purchasers, or mortgagees, who have acquired interests for value and without notice." 1 Black on Judgments (2d Ed.), sec. 169.

While a court has the admitted power to permit amendments in its record, process and pleading, within certain restrictions, both reason and authority deny the power where the amendment will evade the operation of a statute (for no court has the right, in this way, to nullify a statute), or where it will injure the rights of third persons who have acted innocently upon full faith in the correctness of the record or roll as it is, and have acquired rights for value and without notice of any error therein. *Phillips v. Higdon,* 44 N. C., 380; *Cogdell v. Exum,* 69 N. C., 464; *Patterson v. Wadsworth,* 94 N. C., 539; *Jefferson v. Bryant,* 161 N. C., 404; Anno. Cases, 1915, A, 58, and cases cited therein from other jurisdictions.

MANN *v.* MANN.

As to the power of the Court to amend a record or judgment, where the interests of a third party will be prejudicially affected thereby, see Freeman on Judgments (3d Ed.), sec. 74. There is also a rule that where one of two innocent parties must suffer, he who has so conducted himself, by his negligence or otherwise, as to occasion the loss must sustain it. Broom's Legal Maxims (6 Am. Ed.), marg. p. 686, op. of *Ashurst, J.;* 6 Term Reports (Eng.), 70. It is seldom the case that the scale of justice is exactly in equilibria, for it usually happens that some degree of laches, negligence, or want of caution, causes it to preponderate in favor of the one side or the other, although both parties may, in a certain sense, be considered as innocent or guiltless, there being no moral wrong; but even when both of the parties are equally innocent and equally diligent, the rule generally applicable is *Melior est conditio possidentis,* or *defendentis,* as the case may be, or, in other words, the person against whom the relief is asked must be favored; and this is assuredly true where he who asks for the relief has been in fault. And it also is correct to say that where a party seeks to enforce an agreement, which, even though not *malum in see* is *malum prohibitum,* or contrary to a statute, he will find himself not to be a favorite of the law, and certainly not of equity, for when he comes into a court to assert and enforce his supposed right two answers must be given to his demand: the one that he must draw justice, as it has been said, from a pure fountain, and the other that the condition of his adversary is the better one. *Munt v. Stokes,* 4 T. R., 564; 2 Inst., 391; Broom L. M., marg. p. 690.

"It is equally unfit that a man should be allowed to take advantage of what the law says he ought not to do, whether the thing is prohibited because it is against good morals, or because it is against the interest of the State." 6 R. C. L., p. 701, sec. 106, and *Cansler v. Penland,* 125 N. C., 578, where it is said:

"As to the validity of contracts, the law makes no distinction between acts *mala in se* and acts *mala prohibita,* or wrong, simply because they are prohibited by statute. When a statute intends to prohibit an act it must be held that its violation is illegal, without regard to the reason of the inhibition or the morality or immorality of the act; and that is so without regard to the ignorance of the parties as to the prohibiting statute. The law would be false to itself if it allowed a contract to be enforced in the courts against the intent and express provisions of the law."

And again: "The defense is allowed, not for the sake of the defendant, but of the law itself. It will not enforce what it has forbidden and denounced. . . . Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the

case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract, and void for the same reasons. Wherever the contamination reaches, it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violations," citing *Oscanyan v. Arms Co.,* 103 U. S., 268.

The doctrine is that when the Court discovers that it is asked to aid in enforcing an illegal transaction, it will of its own motion withdraw its hand. *Cansler v. Penland, supra,* at p. 581. It is pleaded here, and the Court will not recognize it by inserting it in its judgment if otherwise it had the power to do so. So that whether we place our decision upon the ground of former judgment, or that the claim now made is inherently bad, as being against the provision of the statute under which the proceeding was instituted and the district formed, the petitioners must fail. It is a strict estoppel by former judgment created by the *Gibbs case,* and the *Carter case* is at least one of controlling authority against the petitioners.

But there is still another reason, which we will state presently, why the petitioners must fail, and one, if anything, more potential and efficacious than the others we have assigned. It is evidently the one upon which the court principally acted when it denied the prayer for relief. The judgment sought to be amended was not one by consent, and if it was this Court has held that it cannot be amended without the consent of all the parties to be affected thereby. 1 Black on Judgments, p. 230; *McEachern v. Kerchner,* 90 N. C., 177. It may be set aside for fraud, mistake, duress, and so forth, in a proper case, but there is no such prayer here and no allegation or evidence that entitles the parties to any such relief.

This is a judgment given upon full consideration by the court in *invitum.* The record shows that the testimony was carefully considered and the facts found by the court thereupon. Numerous exceptions were filed by sundry persons, and were, upon due notice to all parties, regularly and deliberately passed upon and the result declared upon the findings. It, therefore, was in all respects a judgment, upon due investigation, of the court, and not of the parties. It is undoubtedly true that a court may correct or amend its record, process or pleading, to make them speak the truth— that is, to record what was *actually* done by the court—but this rule does not extend in its application so far as to permit the court to revise a judgment and to insert in it something that it really and in fact did not do. It is not what the parties or the court intended to do, but did not do, but what was really done and was intended to be made a part of the record, but was inadvertently omitted

therefrom.  The law is well settled on this point.  The doctrine is thus-
stated in Freeman on Judgments (3d Ed.), secs. 69 and 70.

"During the term wherein any judicial act is done, the record remain-
eth in the breast of the judges of the court and in their remembrance, and
therefore the roll is alterable during the term, as the judges shall direct;
but when the term is past, then the record is in the roll and admitteth
no alteration, averment, or proof to the contrary. . . . As a general
rule, no final judgment can be amended after the term at which it was-
rendered.  The law does not authorize the correction of judicial errors
under the pretense of correcting clerical errors.  To entitle a party to
an order amending a judgment or decree, he must establish that the
entry as made does not conform to what the court intended it should be
when it was ordered.  Thus if a solicitor inadvertently omit from a de-
cree some clause which he intended to insert, and present the decree to
the judge, who adopts it as the judgment of the court, this is no ground
for an amendment, for the facts do not show that the court intended to
pronounce any different decree from the one prepared by the solicitor,
and to change the record would be equivalent to exercising a revisory
power over the judgment itself by the same authority that pronounced
it."  1 Black on Judgments, sec. 156, p. 227; *Forquer v. Forquer,* 19
Ill., 68.

Where the record itself furnishes the evidence as to what the judg-
ment was the court may have it reformed so as to express formally what
it did; or where it appears that certain entries should be made, in order
to carry the judgment into effect, the court may perhaps pass an order-
to correct the apparent mistake.  Freeman, sec. 70.  But these are ex-
ceptions to the general rule and do not apply here.  Nor are we con--
cerned with the power of the court to correct its records during the
term, when the whole matter is said to be "in the breast of the judge,
or in *fieri,*" for then the record is "in paper"; but after adjournment "it
is upon the roll," and the right of amendment is quite different, and is
thus stated in 1 Black on Judgments, secs. 154 to 159, omitting imma-
terial parts:

"That part of the common-law rule which declares that no judgment
can be amended after the term at which it was rendered can scarcely be
said to survive in this country in all its original inflexibility.  Divided
between the policy of administering justice liberally and equitably and
the habit of ascribing the utmost sanctity to a record once completed,
the courts have suffered exceptions to be introduced which are of such
importance as to require the rule to be much modified before it will
apply to contemporary practice.  A conservative statement of the rule
as at present observed, and one fully supported by the authorities, would
be as follows:  After the expiration of the term at which a judgment

MANN v. MANN.

or decree was rendered, it is out of the power of the court to amend it in any matter of substance or in any matter affecting the merits. . . . We shall endeavor to show that, beside the correction of clerical errors, the courts have power, after the term, to supply omissions in a judgment and to reform and perfect it, so as to make it conform exactly to the judgment intended to be given in the case; but that they cannot use the power of amendment to correct judicial errors or to enter a judgment which was neither in fact rendered nor intended to be rendered. Taken with these corollaries, the rule as above stated will be found to express the common opinion of the authorities on this point at the present time. In illustration of the rule, the proposition may be cited that after the term the power of the court to amend its own record is limited to such corrections or changes as are in affirmance of the judgment originally rendered; it has no authority to strike out the judgment, to enlarge or diminish it, to change its whole nature, or to render another and different judgment upon the same record. As regards mere clerical errors, mistakes arising from inadvertence, or formal misprisions of clerks or other officers, it is always in the power of the court, even after the adjournment of the term, to make such corrections or amendments as truth requires. In regard to the power of amending judgments by supplying omissions, it is necessary not to lose sight of the principle that amendments can only be allowed for the purpose of making the record conform to the truth, not for the purpose of revising and changing the judgment. If the proposed addition is a mere afterthought and formed no part of the judgment as originally intended and pronounced it cannot be brought in by way of amendment; but, on the other hand, as already stated, the power of amendment cannot be made the means of adding to a judgment or decree something not originally contemplated by it or which is foreign to its intended scope and purpose. Thus, in an Illinois case, it appeared that a decree had been drawn up by the plaintiff's solicitor and accepted and signed by the judge as the decree of the court; afterwards it was discovered that the solicitor had omitted from the decree a clause which he had intended to make a part of it, and application was made to have it added, but it was considered to be no proper case for an amendment, inasmuch as it did not appear that the court had intended to insert the clause in question, and, consequently, to add it by amendment would be to change the sentence pronounced and revise its own decree. A judgment entry may be amended at any time to make it correspond with the judgment actually rendered; and for this purpose, either additions or elisions may be made. In a case where the judgment pronounced by the court upon motion of the defendant was 'that the complaint be dismissed with costs,' and the judgment entered by the clerk was that the complaint

be dismissed 'upon the merits,' with costs to the defendant, it was held that the insertion of the words quoted was a material addition to the judgment which the clerk had no authority to make, and was properly stricken out on motion. The allowance of an amendment should never be used by the court as a means of reviewing its judgments on the merits, or correcting its own judicial mistakes, or substituting a judgment which it neither in fact rendered nor intended to render. 'The power of courts to amend judgments after the close of the term extends to all omissions to enter the judgments pronounced *by the court* and to clerical errors in the form of the entry, whether by introducing a fact which ought to appear on the record or by striking out a statement of a fact improperly introduced, and when the record affords sufficient evidence. But when the defect consists in the failure of the court to render the proper judgment, *or arises from a want of judicial action,* the record cannot be corrected after the term has closed, the cause being no longer *sub judice.* A judgment, therefore, cannot be amended so as to vary the rights of the parties as fixed by the original decision of the court and the judgment entered thereon."

It was said in *Estate of Potter,* 141 Calif., 424, 426: "The fact that a party litigant inadvertently fails to ask for a judgment confers neither power upon the court to order, nor right upon the litigant to seek, a modification of such judgment as the court may have advisedly given. If the court has not rendered a judgment that it might or should have rendered, or if it has rendered an imperfect or improper judgment, it has no power to remedy such errors by ordering an amendment *nunc pro tunc* of a proper judgment."

The doctrine was strongly and clearly stated in *Heath v. N. Y., etc., Banking Co.,* 146 N. Y., 260, by *Judge Bartlett:* "The amendment made corrected no clerical error, no mistake of computation, but changed the substantial rights of the parties. It would be a most dangerous precedent if such a wide departure from due and orderly procedure, as is here disclosed, should be permitted. The contention of plaintiff's counsel that section 723 of the Code of Civil Procedure allows such a motion to be made is a mistake. This section was designed to confer upon courts the amplest power to correct mistakes in process, pleading, and in all other respects, so long as the substantial rights of parties are not affected. *Bohlen v. Met. El. Ry. Co.,* 121 N. Y., 546-550. In the case at bar a decision upon the merits was altered and defendant's recovery reduced by a very considerable amount. The plaintiff was not remediless in the situation in which he found himself, assuming there was merit in his contention, but he mistook his remedy when he resorted to motion now under review. The defendant cannot be subjected to a reduction in the amount of its original recovery and a radical change

in the rulings of the court on the questions presented, except upon a new trial. We express no opinion as to the merits, placing our decision solely on the ground that the special term had no power to entertain this motion."

And in .*Ex Parte Sibbald v. U. S.,* 12 Peters (37 U. S.), 488, 492, *Justice Baldwin* said: "No principle is better settled or of more universal application than that no court can reverse or annul its own final decrees or judgments, for errors of fact or law, after the term in which they have been rendered, unless for clerical mistake, or to reinstate a cause dismissed by mistake, from which it follows that no change or modification can be made which may substantially vary or affect it in any material thing. Bills of review in cases of equity and writs of error *coram vobis,* at law are exceptions which cannot affect the present motion. Whatever was before the court and is disposed of is considered as finally settled."

The language of the Court in *Williams v. Hayes,* 68 Wis., 248, 255, fits closely the facts of our case. It was there said: "It would be unsafe to permit judgments to be changed in a substantial matter years after the same are entered upon the mere recollection of the judge that he intended to direct a different one from that which he expressly directed at the time, and we do not find any case which sanctions such proceedings. Such a modification of the judgment is not correcting the judgment as announced at the time, but it is making the judgment conform to what the court ought to have adjudged, or to what he intended to adjudge, but failed to adjudge. Such a change in a judgment can only be made during the term in which it was entered." *Latimer v. Morrain,* 43 Wis., 107; *Selz v. First Nat. Bank,* 60 Wis., 246; *Schobacher v. Germantown F. M. Ins. Co.,* 59 Wis., 86.

"Nothing could be added to or subtracted from the judgment at a subsequent term unless it was to correct a mere clerical omission or misprision." *Gibson v. Wilson,* 18 Ala., at p. 65.

We will content ourselves with one more quotation from the opinion of the Court (by *Clopton, J.*) in *Browder v. Faulkner,* 82 Ala., 257, 258: "The power of courts to amend judgments after the close of the term extends to all omissions to enter the judgments pronounced by the court and to clerical errors in the form of the entry, whether by introducing a fact which ought to appear on the record or by striking out a statement of a fact improperly introduced, and when the record affords sufficient evidence. But when the defect consists in the failure of the court to render the proper judgment, or arises from a want of judicial action, the record cannot be corrected after the term has closed, the cause being no longer *sub judice.* The purpose of amendment is to make the judgment conform to what the court intended it should be, to

MANN v. MANN.

set right the record, and to make it speak the truth, so that omissions or clerical errors shall not prejudice parties litigant. The power to amend *nunc pro tunc* is not revisory in its nature and is not intended to correct judicial errors. Such amendments 'ought never to be the means of modifying or enlarging the judgment or the judgment record so that it shall express something which the court did not pronounce, even though the proposed amendment embraces matter which ought clearly to have been pronounced.' However erroneous, the express judgment of the court cannot be corrected as at a subsequent term." See 1 Black on Judgments, secs. 154 to 159.

The following cases will be found to state the same rule very explicitly and to confine it strictly within its limits in actual practice: *DeCastro v. Richardson*, 25 Calif., 49; *Evans v. Fisher*, 26 Mo. App., 541; *Mo., etc., Ry. Co. v. Haynes*, 82 Tex., 448; *Robinson v. Broom*, 82 Ill., 279; *Pursley v. Wickle*, 4 Ind. App., 382; *Gore v. Lyford*, 44 N. H., 525; *Chase v. Whitten*, 62 Minn., 498; *Day v. Mountin*, 89 Ibid., 297; *Johnson v. Foreman*, 24 Ind. App., 93. All of which cases hold that the power of amendment cannot be exercised where there has been "a mere judicial mistake," or a failure to do that which the court perhaps would have done if called to its attention, and if lawful to be done, or where it is a "mistake in the judgment and not in the record" which should be carefully distinguished; or where the relief asked for, under the guise of a proposed amendment, is really not an amendment, but an alteration of the original judgment, or where the proposed amendment is a means of incorporating into a judgment a mere afterthought or of modifying or enlarging the judgment, so that it shall express something which the court did not do, even though, as we have said, it embraces matter which, if legal, might have entered into the judgment of the court.

The rule as to the power of a court to amend its records has nowhere been better or more clearly stated, and the power confined within its proper orbit, than by this Court in former decisions. It was said by *Justice Reads* in *Wolfe v. Davis*, 74 N. C., at p. 599: "In granting the motion of the plaintiff to amend the record of Fall Term, 1869, by entering a judgment *quando, nunc pro tunc*, his Honor seems to have been of the opinion that the power to amend embraces something more than simply making the record speak the truth—not only what *was* done, but what *ought to have been done*. But that is error. And as there was not in fact any judgment *quando* rendered at Fall Term, 1869, it would be improper to make the record say that there was."

*Simmons v. Dowd*, 77 N. C., at p. 158, is more like ours in principle and the nature of the amendment proposed to be made, and there the same Justice said: "It is common learning that all the judgments and proceedings of the court are 'in the breast of the court' during the term

and may be vacated or amended in any way, but after the term closes they are sealed forever. This applies to all proceedings of the court which are regular and according to the course and practice of the court, however erroneous the same may be. And note that an erroneous judgment may be just as regular as one which is free from error. If I sue a man and recover $100, my judgment is regular. If I ought to have recovered $200, or ought only to have recovered $50, my judgment for $100 is erroneous, but still it is regular; and after the term of the court when it is rendered I cannot have it increased and the defendant cannot have it diminished. If this were not so, there would be no end to litigation."

The Court says, in *Wall v. Covington,* 83 N. C., 144, that the insertion in the judgment must be of something actually done by the court, the entry of which was omitted by its oversight, or that of the clerk.

It was held in *Moore v. Hinnant,* 90 N. C., at p. 163, 164: "It is simply an application to the court to alter the judgment entered and intended, upon mature consideration, to be entered, so as to permit and direct the case to be tried again in an aspect of it not heretofore, as is alleged, fully presented and considered. The application is an unusual one. Indeed it is without precedent, so far as we know, in this State. We have not been favored with an argument in support of it, and we have not, after diligent search, been able to find any decision or other authority that warrants it."

Speaking of the power to amend its records so that they will speak the truth and state what was really done by the court, and which was left out by mistake of it or its officer, the Court further says, in *Moore v. Hinnant, supra,* at p. 165: "The court has power at all times to make its records speak the truth, having due regard for the rights of parties and third persons. This power, however, ought to be exercised with scrutinizing care and caution. But the court has not the power at a subsequent term to revoke, set aside, alter or amend a final judgment entered at a former term, except upon application to rehear, or because of 'mistake, inadvertence, surprise or excusable neglect,' as allowed by law. The exercise of such a power is forbidden by principle and the overwhelming weight of authority, if indeed there can be any well-considered case found that sustains it."

That case quotes with approval the passage from *Coke* which is set forth in this opinion, and reviews the law at length. And in *Cook v. Moore,* 100 N. C., 294, at 295, this language is used by *Justice Merrimon:* "It is not contended that this Court can reverse, set aside, or modify in any material respect a regular final judgment at a term thereof subsequent to that at which it was entered. It is clear and well settled that it has no such authority except upon an application to

rehear, or because of 'mistake, inadvertence, surprise, or excusable neglect,' as may be allowed by statute. *Murphy v. Merritt,* 63 N. C., 502; *Mabry v. Erwin,* 78 N. C., 45; *Moore v. Hinnant,* 90 N. C., 163, and cases there cited; *Sebbald v. U. S.,* 12 Pet., 488; *Bank v. Moss,* 6 How., 31; *Bronson v. Schulten,* 104 U. S., 410." And thus conceding the power of amendment in proper cases and at the proper time, the Court proceeds to say: "The court has authority, upon application, or *ex mero motu,* at all times in term, and it is its duty, to amend and correct its records so as to make them speak the truth and be consistent and to make proper entries, *nunc pro tunc,* that were certainly intended, but omitted to be made by mistake, accident or inadvertence of the court. Such authority is essential. Courts are not infallible; they, like all other earthly tribunals, are liable to make mistakes of fact that cannot be corrected in the ordinary course of procedure, and it would contravene every principle of reason and justice if they could not in some way correct them. The law contemplates that each court can itself the better, the more certainly and accurately, correct such, its own mistakes, than another court, whether appellant or not. But such power should be exercised with great care and caution, and only upon clear and satisfactory proof, because when entries are made in the course of the business of the court they are presumed to have been made upon careful consideration and to be correct, and, moreover, they import absolute verity while they are allowed to remain," citing numerous authorities.

In 15 Ruling Cas. Law, at p. 673, sec. 124, we find the following statement of the law, the text being sustained by a full citation of authorities in the notes: "In the exercise of the power to make amendments a court is not authorized to do more than to make the records correspond to the actual facts, and cannot, under the form of an amendment of its records, correct a judicial error or make of record an order or judgment that was never in fact given. The power to amend should not be confounded with the power to create. It presupposes an existing record which is defective by reason of some clerical error or mistake, or the omission of some entry which should have been made during the progress of the case, or by the loss of some document originally filed therein. . . . An amendment of a judgment can be allowed only for the purpose of making the record speak the truth, and not for the purpose of revising or changing the judgment, or for the purpose of correcting an error of law therein contained. Nor can a judgment be amended so as to include provisions or directions not proper to have been made at the date of its original entry upon the allegations of the pleadings."

These authorities, therefore, hold that it is not what the court would have done if properly invoked to do it that will be put into the judg-

ment or other record, nor what the parties may have wanted the court to do and failed to ask for it, but rather what was in fact done and which was omitted by inadvertence of the court or clerk. The power of amendment, therefore, applies to the mere record of the judgment, and not to the judgment itself, which must be the same as the court delivered. *Scammon v. Bonslett,* 118 Calif., 293 (62 Am. St. Rep., 226).

The principle, as we have stated it, has been accepted with the greatest unanimity by the Courts of the country, and is both reasonable and just. Applying it to the facts in this record, we find nothing to take this case out of that principle, but everything to induce a strict application of it. The petitioners say that they did not see to it, that the clause in question was inserted in the judgment because of hurry and confusion at the close of the investigation, when the court was about to provide for an election of commissioners. Of course, this is an admission that no motion was made to the court to have the clause form a part of the judgment, and the application, therefore, resolves itself most assuredly into an effort to have done now what the petitioners did not do then, and also what the court did not do : to *revise* the judgment and not merely to *amend* it by making it speak the truth as to what was actually done by the court, and not to convert a miscopied judgment into the very one which the court in fact rendered, but which by inadvertence or mistake was not truly recorded. This will not do, and is contrary to all the authorities upon the subject. It would greatly impair public confidence in the integrity of our court records should we permit such an amendment to be made, and this is said without regard to its prejudicial effect upon innocent parties, who have paid out their money in the purchase of the bonds, relying on the perfect correctness and validity of the judgment. In the absence of fraud or other legal cause, and none such is alleged, it would be unjust to those parties and unwarranted in law or equity should we grant the prayer of the petitioners.

There is an allegation, *on information and belief,* that the clause was omitted from the judgment by mistake and inadvertence of the parties— and the court—but that is all, and it is insufficient to justify an amendment of the judgment. Where is there any *legal* evidence that the court at the time intended to and did pronounce any such judgment? The clerk does not so find, and if he had done so, there is no evidence to support such a finding. He simply states that "it was the intention of the *parties* to this proceeding that the final judgment should contain words in substance the same as those set out in the original petition," and, further on, "that the said language (setting it out in full), or the same in effect, was omitted from the judgment by mistake and inadvertence." Whose mistake and inadvertence? Why, of course, that of the

parties. This is no ground for interference by this Court with the judgment as it stands.. The petitioners did not except to the findings of the clerk, and are therefore bound by them, and the respondent only excepted generally, thereby raising the single question whether, in law, the findings are sufficient to warrant the amendment of the judgment.

The judge could, and perhaps should, have acted upon this view of the record, and denied the motion, but as he dismissed the motion anyhow, we are not concerned with the reason upon which it should have been based. It was right, if any reason in law sustained it. He gave one of the several correct reasons upon which the denial could be founded, and this is enough.

We need not discuss the question whether the motioners were guilty of laches or have delayed action too long, but we may state generally that the delay was not excusable, nor was the failure to know what really was the form of the judgment. About nine years have elapsed since its rendition; there were many exceptions filed to it by the parties, and one suit brought to enjoin its execution. It would seem that during all this contention about it, exceptions filed to eliminate some of its terms and an injunction to stop its enforcement, some of the interested parties should have read it so as to find out what terms it did or did not contain. The failure to make proper inquiry cannot well be held as excusable when there was nothing done by the defendants or any one else to prevent investigation.

As we have held that the judgment cannot be amended for other reasons, it may not be needful to say much about *McCracken v. R. R. Co.,* 168 N: C., 62, on which the motioners rely, but there is a clear distinction between the two cases. In *McCracken's case,* the statute merely permitted an election upon the issuance of bonds for completion of the railroad. The people could vote for it or not as they pleased, and if so, they could do so upon condition, as they did, which was binding on the railroad company, as it induced a favorable vote for it. There was absolutely nothing forbidding such a condition, while here there is a provision—and a mandatory one, too—as shown by the *Chief Justice* in the *Gibbs case,* that a sufficient sum be raised by assessment to construct and maintain the drainage system. If that amount is reduced by agreement of the parties below what is necessary for the execution of the plan contemplated by the statute, the purpose of the latter is, to that extent, defeated, and the project must fail. This would be in direct violation of the statute, instead of being something impliedly permitted by it, as in the *McCracken case.* The petitioners will not, therefore, be heard to say that their assent to the judgment was based upon a stipulation which was against the express provisions of the statute. The restriction as to amount, or ratio, of assessment was

MANN v. MANN.

something that the court could not originally have inserted in the judgment, and it follows that this cannot be done by amendment. A judgment cannot be altered so as to include a provision not proper to have been inserted at the date of its original entry. *Scammon v. Bonslett,* 62 Am. St. Rep., 226.

The limitation as to cost of maintenance cannot be said to have been even tacitly observed, for there has been no occasion to exercise the power given by the judgment until recently, when increase in cost was found to be necessary. No application having been made to the court to insert the clause as to maintenance in the judgment, there could have been no mistake by the court or the clerk as to it, and the referee did not find that there had been any such mistake, and could not so find, as there was no evidence of it, and the court had no opportunity or chance to make a mistake. This being so, there was no choice between remedies left to the petitioners, as there was no remedy at all, because there was no right, either legal or equitable, to be asserted by motion, petition or action. It is not a case where the doctrine of correction or reformation applies, for there has been no mistake. The judgment records exactly what the court did, and the record needs no correction, for now it speaks the truth. All this is true even if the court could have inserted the illegal change upon proper application. If the clause had been legally inserted the bonds would have been unsalable, as the entire $400,000 bond issue would have been discredited in the market by a provision which would be utterly destructive of the security for them. We therefore hold that no amendment of the judgment can be made:

1. Because the petitioners are estopped by a former judgment deciding against them upon the identical question, the parties being the same.

2. This is not a consent judgment, but one given by the court upon consideration and *in invitum,* and is not, therefore, subject to amendment unless the court or its clerk has failed truly to record the judgment actually delivered.

3. There is no sufficient finding that the provision was intended by the court to be a part of the judgment and was omitted therefrom by its mistake or that of the clerk, and if there had been there is not, in law, sufficient evidence to support such a finding, if there is any at all.

4. The omission of the parties to request that the alleged provision be inserted in the judgment, even if inadvertent, does not entitle them to the relief asked by them.

5. The provision itself is opposed to the express terms of the statute, and therefore not enforcible, and could not legally have become a part of the judgment.

6. The petitioners have been guilty of such laches as would defeat their right to relief, had any existed, if they are not barred by the statute, Revisal, sec. 395 (9), could this proceeding be treated as an application for equitable relief.

7. If this is to be regarded as a motion to be relieved of a judgment, or other proceeding, under Revisal, sec. 513, because of mistake, inadvertence, surprise or excusable neglect, or to supply an omission in any proceeding under that section, the motion comes too late, as the time within which such relief can be granted—that is, one year—has long since expired.

The judge decided correctly, and we affirm the judgment.

Affirmed.

CLARK, C. J., concurring: The points raised by this appeal were decided in the former case, *Gibbs v. Drainage Comrs.*, 175 N. C., 5, and that decision is conclusive of this case, which merely presents the same contentions in a different way.

Milton's fallen angel does say, in the emphatic language quoted in the dissenting opinion in this case, that the judgment against him was final and conclusive, no matter "which way" he turned, but he completed the line by admitting the justice of the judgment. *Paradise Lost,* Book IV, line 75. Neither he nor any one else since has denied the conclusiveness nor the justice of the judgment. It has never been modified or reversed.

ALLEN, J., dissenting: The following stipulation appears in the petition, which is the foundation of this proceeding: "It is understood and the petitioners herein join in this proceeding upon the express condition that after the proper drainage of the said proposed district is effected as set out in this petition, or as may be adopted by the proper authorities as provided for hereunder and by the laws authorizing same, then the cost of maintaining and keeping the proper drainage in effect shall not exceed 15 cents per acre for each acre included within the bounds of said district."

This limitation on the cost of maintenance was observed until recently when the drainage commissioners, acting without making any application to the court, and without notice to the landowners, increased the assessment for maintenance from 15 cents, as provided in the petition, to 45 cents. The landowners then brought an action to restrain the collection of the increased assessment, contending that it was illegal, but relief was denied them upon the ground that the stipulation in the petition as to the cost of maintenance was not incorporated in the judgment. See *Gibbs v. Drainage Comrs.*, 175 N. C., 6. The landowners, following the procedure directed in *Banks v. Lane,* 171 N. C., 505, then

moved before the clerk to correct the judgment in the proceeding by inserting therein the provision in the petition as to maintenance, alleging that it had been omitted therefrom by mistake. The clerk found as a fact that the provision had been omitted by mistake, and that the landowners did not know of the omission until twelve months before this motion was made and ordered that the judgment be corrected. The drainage commissioners appealed to the judge, who refused to find any facts and dismissed the motion, and an appeal was then taken to this Court.

In this condition of the record the moving parties are entitled to have the appeal considered upon the assumption that their allegations are true, and that the provision as to maintenance was omitted from the judgment by mistake, and that they were ignorant of the omission until twelve months ago. If so, can the court afford relief? The power to do so is not denied, and, if controverted, instances of its exercise are numerous. "The court cannot at a subsequent term amend, modify or interfere with a regular judgment regularly entered of record at a preceding term; it can correct, amend, or modify such a one improperly entered, or enter one which, through accident, mistake of fact, or inadvertence of the court, was not properly entered, or not entered at the former term, when the court intended to enter and ought to have entered it." *Cook v. Moore,* 100 N. C., 296; *Beam v. Bridgers,* 111 N. C., 269, and cases cited.

It is, however, objected that the landowners have waited too long, and that bonds have been sold and are in the hands of innocent purchasers. The first objection is met by the fact that until recently there has been no effort to collect more than 15 cents, and that the owners were ignorant of the mistake, and, by the law as stated by *Smith, C. J.,* in *Brooks v. Stephens,* 100 N. C., 299, that "The court may, for the purpose of ascertaining the facts, hear evidence (*S. v. Swepson,* 83 N. C., 584); may supply an omission (*Perry v. Adams,* 83 N. C., 266; *Walton v. Pearson,* 85 N. C., 34); and may do this without regard to lapse of time (*Long v. Long,* 85 N. C., 415)." The second objection is not before us, as the bondholders are not parties.

As said in *Ashe v. Streator,* 53 N. C., 257: "It is a mistake to suppose that interests have vested under the records as it stands that prevent an amendment. The persons whose interests are affected are parties to the record. They are bound to know the truth of the transactions as to which the record speaks, to act upon the truth as it happened, and upon the expectation that the record will be made to speak truly. No party has a right to complain, and no other person has an interest that will be prejudiced." And in *Walton v. Pearson,* 85 N. C., 48: "It is the duty of every court to supply the omissions of its officers in record-

ing its proceedings, and to see that its record truly sets forth its action in each and every instance; and this it must do upon the application of any person interested, and without regard to its effect upon the rights of parties or of third persons; and neither is it open to any other tribunal to call in question the propriety of its action or the verity of its records as made."

The proper procedure is, I submit, as in *Harrison v. Harrison,* 106 N. C., 282, and *S. c.,* 109 N. C., 346, to correct the judgment and to permit the papers to remain on file for the protection of the bondholders. It is not the time now to adjudicate the rights of the purchasers of the bonds, who are not before the court, and without giving the owners of the land to contest their right to claim as innocent purchasers without notice of the mistake. If relief is not granted to the landowners on this motion they are without remedy against an illegal assessment. If they apply to a court of equity they are told to move in the original proceeding, and when they make their motion they are denied a hearing upon the ground that they are bound by the judgments, and that a court will not correct them, although the result of a mistake. One is reminded of the despairing cry of Satan, as depicted by Milton, "which way I fly is hell."